**Opinion issued June 3, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00211-CV

———————————

**HOUREAL CORPORATION, Appellant**

**V.**

**RESCUE CONCEPTS INC., Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-77903A**

---

## O P I N I O N

This is an appeal from a final judgment granting a motion to dismiss under the Texas Citizen Participation Act ("TCPA"). HouReal Corporation contends that the trial court reversibly erred in dismissing its breach of contract claims against

Rescue Concepts Inc. ("RCI") under the TCPA and in awarding attorney's fees and costs to RCI.

Because we hold that the TCPA does not apply to HouReal's breach of contract claims, we reverse and remand.

## Background

This appeal is the latest episode in a long-running dispute over a failed sale of real property in Liberty County. In 2014, HouReal entered into an earnest money contract to buy a 300-acre tract of land ("the Property") from RCI ("2014 Contract"). When RCI failed to comply with its contractual obligations, including failing to provide a property survey to HouReal, HouReal sued RCI for breach of the 2014 Contract.

HouReal alleged that the 2014 Contract authorized it to obtain specific performance in the event of RCI's material breach. To preserve its right to specific performance, HouReal recorded a notice of lis pendens[1] in the Liberty County property records.

---

[1] "A notice of lis pendens broadcasts 'to the world' the existence of ongoing litigation regarding ownership of the property." *Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 753 (Tex. 2017); TEX. PROP. CODE § 12.007.

RCI then moved to expunge the lis pendens—which the trial court initially denied. But after this Court conditionally granted mandamus relief,[2] the trial court reconsidered and signed an order expunging HouReal's notice of lis pendens. According to HouReal, RCI recorded its notice of the expunction order in Liberty County on July 13, 2016.[3]

HouReal's initial suit against RCI was set for trial in January 2020. Unbeknownst to HouReal, RCI sold the Property to NPH Dayton, LLC ("NPH Dayton") on August 30, 2019. HouReal alleges that it did not discover that RCI sold the Property until December 2019—shortly before the trial setting.

HouReal asked the trial court to allow it to conduct discovery from RCI and Michael Plank, general manager of NPH Dayton and principal for various related National Property Holdings ("NPH") entities, but that request was denied. According to HouReal, it was thus unable to join NPH Dayton or any related entities in that initial lawsuit. And, because RCI no longer owned the Property at the time

---

[2]  *See In re Rescue Concepts, Inc.*, 498 S.W.3d 190, 194 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (conditionally granting mandamus relief because HouReal did not submit any evidence in response to RCI's motion to expunge in trial court and therefore failed to establish by preponderance of evidence probable validity of its real property claim).

[3]  HouReal contends that under the version of Texas Property Code section 12.0071 in effect at that time, the expunction did not "eradicate notice arising independently of the recorded instrument expunged." *See Sommers*, 521 S.W.3d at 756.

of that trial, HouReal was allegedly unable to obtain specific performance as a remedy.

The jury in that initial suit found that RCI materially breached the 2014 Contract and awarded HouReal $425,000 in damages. The trial court, however, set aside the jury's damage award, and both parties appealed to this Court.[4]

While that appeal was pending,[5] HouReal filed a verified petition for pre-suit depositions under Texas Rule of Civil Procedure 202[6] against Plank (as principal for various NPH Entities)[7] and against Ryan Lovell (a corporate representative of NPH Dayton).

---

[4] *See Rescue Concepts Inc. v. HouReal Corp.*, 696 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

[5] That appeal has since been resolved. *See id.* at 141–42 (holding that although RCI was in default when it failed to provide satisfactory property survey by required date, evidence conclusively established that HouReal treated contract as continuing after RCI's material breach, HouReal's performance of its own contractual obligations was not excused, and HouReal failed to comply with contractual provisions requiring it to deposit additional earnest money).

[6] *See* TEX. R. CIV. P. 202 (allowing for depositions before suit or to investigate claims).

[7] Michael Plank was identified as the manager for National Property Holdings, NPH Dayton, LLC, Rail Logix, and Rail Logix Dayton, LLC (the "NPH Entities"). The NPH Entities, along with Plank individually, were included as defendants in the underlying action. After the trial court granted RCI's TCPA motion to dismiss, HouReal filed a third amended petition in which it nonsuited its claims against Plank, NPH, NPH Dayton, LLC, and Rail Logix, LLC. HouReal's claims remain pending against Rail Logix Dayton, LLC in the original cause number, and none of the NPH Entities are parties to this appeal.

According to HouReal, the documents produced in the Rule 202 proceeding revealed that NPH had contacted RCI about purchasing the Property in May 2017. RCI then sent an email to NPH that informed the NPH Entities of litigation between HouReal and RCI in the initial suit. NPH recognized in those emails that the initial suit was an "unacceptable risk," and informed RCI that the only way NPH would move forward with the sale would be with a "strong indemnity from [RCI] for all costs relative to purchasing the property, as well as the sale price, should the litigation survive closing."

According to HouReal, RCI declined to provide the indemnity requested by NPH, and therefore NPH did not purchase the Property in 2017. But NPH renewed its interest in purchasing the Property in 2018. In connection with those renewed discussions, HouReal maintains that RCI incorrectly informed NPH that RCI had waited until 2019 to record its notice of the 2016 order expunging HouReal's notice of lis pendens in the Liberty County property records. That incorrect assertion, according to HouReal, if true, "might have provided NPH with a defense against HouReal's pre-existing claim for specific performance."[8]

---

[8] When the Legislature amended Texas Property Code section 12.0071, effective September 1, 2017, it included additional language that provides: "an interest in the real property may be transferred or encumbered free of all matters asserted or disclosed in the notice and all claims or other matters asserted or disclosed in the action in connection with which the notice was filed." TEX. PROP. CODE § 12.0071(f)(2).

As a result, NPH Dayton allegedly obtained title to the Property with "independent knowledge of the claims and rights of HouReal that NPH had obtained no later than May 2017." Thus, according to HouReal, NPH Dayton was not a "bona fide purchaser of the Property and did not take the property free and clear of HouReal's prior contractual rights, including its contractual right to specific performance of the [2014 Contract]."

Based on all of this, HouReal brought the current lawsuit against the NPH Entities, Plank, and RCI in November 2021. HouReal pleaded causes of action against Plank and the NPH Entities to quiet title, impose a constructive trust, and set aside the conveyances. HouReal also pleaded that RCI committed two breaches of the 2014 Contract. Specifically, that RCI failed to provide a property survey and conveyed the Property to NPH on August 30, 2019, instead of performing under the 2014 Contract with HouReal. For these alleged breaches of contract, HouReal sought specific performance in accordance with the 2014 Contract.

RCI moved to dismiss HouReal's claims against it under the TCPA. According to RCI, the TCPA requires dismissal of HouReal's claims because they are "based on or in response to" RCI's exercise of its right to petition. The trial court agreed. Following a hearing, it signed an order granting RCI's TCPA motion to dismiss. It also awarded RCI $76,543.93 in trial attorney's fees, $50,000 in conditional appellate attorney's fees, post-judgment interest, and costs.

The trial court subsequently signed a final judgment that incorporates all of its rulings with respect to HouReal and RCI.[9]  And it severed the claims between them into a separate cause number, 2021-77903A.

This appeal by HouReal followed.

## TCPA Motion to Dismiss

HouReal first argues that dismissal here under the TCPA is improper because RCI did not satisfy its initial burden to show that the TCPA applies to HouReal's breach of contract claims.  Specifically, HouReal argues that its legal action for breach of contract is not "based on" or "in response to" RCI's exercise of its right to petition.  We agree.

## A.    Statutory Framework and Standard of Review

Our Legislature enacted the TCPA "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and,

---

[9]    This final judgment was signed March 28, 2023, which was after HouReal filed its notice of appeal in the original cause number, 2021-77903.  HouReal's prematurely filed notice of appeal is deemed filed on the day of, but after, the trial court's March 28 final judgment. *See* TEX. R. APP. P. 27.1(a).  Thus, we hold that HouReal adequately invoked this Court's jurisdiction in the severed cause number—district court Cause No. 2021-77903A—by filing the premature notice of appeal bearing the incorrect original cause number. *See Lusk v. Osorio*, No. 14-17-01011-CV, 2019 WL 3943195, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet.) (mem. op.); *Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 549 n.5 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

7

at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 913–14 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 27.002)). "The statute provides this protection by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review." *Id.* at 914; *see* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .008.

Trial courts review TCPA motions to dismiss in a multi-step process. *McLane Champions*, 671 S.W.3d at 914. First, the moving party must show by a preponderance of the evidence that the TCPA applies to the legal action[10] against it. *Id.*; TEX. CIV. PRAC. & REM. CODE §§ 27.003, .005(b). To meet this burden, the moving party must demonstrate that the legal action is based on or is in response to the movant's exercise of one of the rights listed in section 27.005(b), including the right to petition. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), .005(b)(1)(B). If the movant fails to meet this initial burden, the motion to dismiss fails. *See id.* § 27.005(b).

If the moving party satisfies its initial burden, the second step comes into play. There, the burden shifts to the nonmoving party to establish by clear and specific

---

[10] The TCPA defines "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." TEX. CIV. PRAC. & REM. CODE § 27.001(6).

8

evidence a prima facie case for each essential element of its claim. *See id.* § 27.005(c). If the nonmoving party cannot satisfy that burden, the trial court must dismiss the suit. *See id.*; *McLane Champions*, 671 S.W.3d at 914.

Under the third step—even if the non-movant satisfies the second step—the court will nonetheless dismiss the legal action "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021). We likewise interpret the TCPA and decide whether it applies to a legal action de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). In reviewing whether a legal action is subject to or should be dismissed under the TCPA, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a). We view the pleadings and evidence in the light most favorable to the nonmovant. *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

## B. Right to Petition under the TCPA

Here, our analysis begins and ends with the first step—whether the TCPA applies to this action.[11] *See McLane Champions*, 671 S.W.3d at 914. RCI moved to dismiss HouReal's claims against it on the basis that they are based on, or in response

---

[11]  RCI contends in its briefing that, even if the trial court erred in granting its TCPA motion to dismiss, that error is harmless and we should affirm. *See* TEX. R. APP. P. 44.1(a). RCI contends any error is harmless because dismissal is proper for another reason—because "this Court has already determined that this dispute is over, [and] that HouReal cannot recover *any relief* from RCI for breach of this contract . . . any such breach would be properly dismissed for that reason, rendering harmless any error in dismissing the claim for some other reason." *See Rescue Concepts*, 696 S.W.3d at 141–42.

RCI's argument is essentially a request for this Court to bypass the first and second steps in the TCPA analysis and resolve the appeal based on its res judicata defense. This overlooks the statutory framework under which we are required to review TCPA motions to dismiss. *See McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 914, 920 (Tex. 2023).

Yet in its post-submission briefing, RCI asserts that the Texas Supreme Court recently held that harmless error applies to the erroneous grant of a TCPA motion. *See First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, No. 23-0634, 2025 WL 1197255 (Tex. Apr. 25, 2025). But the holding in that case was limited to instances where a TCPA motion to dismiss was denied by operation of law and the trial court "err[ed] by granting a TCPA motion after the expiration of Section 27.005(a)'s thirty-day window." *Id.* at *6. In that situation, the court held that "the error is harmless and does not warrant reversal if made within the twenty-day period in which the movant could have filed a notice of appeal from the motion's denial by operation of law." *Id.* That is not the issue before us in this case.

And RCI points us to no legal authority, nor are we aware of any, applying the harmless error rule to affirm dismissal, particularly where, as here, the trial court erroneously granted the TCPA motion to dismiss *and* awarded attorney's fees. We decline RCI's invitation to be the first appellate court in Texas to do so.

10

to, communications made by RCI in the initial suit—which it contends was an exercise of its right to petition.

When the Legislature amended the TCPA in 2019, one of the significant changes to the statute was to narrow the categories of connections a claim could have to the exercise of a protected right by removing the phrase "relates to," the most expansive of the categories, from the list. *See ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Now, under the current version of the TCPA, movants like RCI must establish that the legal actions they seek to dismiss are "based on" or "in response to" their exercise of a protected right. *Walgreens v. McKenzie*, No. 23-0955, 2025 WL 1415886, at *3 (Tex. May 16, 2025); *Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *7 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.).

Thus, under the current version of the TCPA, which is applicable here, a trial court "shall dismiss a legal action against the moving party if the moving party demonstrates that the legal action is based on or is in response to . . . the right to petition." TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(B). This language now "narrows the required nexus between the action and protected activity." *Walgreens*, 2025 WL 1415886, at *3. It requires movants to "establish a closer nexus between

11

the claims against them and the communications they point to as their exercise of protected rights." *ML Dev*, 649 S.W.3d at 629.

Accordingly, this Court has held that "[t]he ordinary meaning of the 'is based on' component denotes a legal action that has the relevant TCPA-protected activity 'as a main ingredient' or 'fundamental part' of the challenged legal action." *Ernst & Young*, 2023 WL 4239350, at *8; *see also Base*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining verb "base" as "[t]o make, form, or serve as a foundation for"). And that holding has recently been cited with approval by our supreme court. *See Walgreens*, 2025 WL 1415886, at *3–4.

The second component—"in response to"—denotes some sort of answer or other act in return or "in reaction to" the alleged communications. *Id*. at *3–4; *Ernst & Young*, 2023 WL 4239350, at *8.

The exercise of the right to petition includes any "communication in or pertaining to . . . a judicial proceeding." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i). And a "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). But if a claim does not allege a communication, but is based on conduct, the TCPA does not apply. *See, e.g.*, *Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.).

12

In support of its argument that HouReal's legal action implicates its right to petition, RCI points to the following three paragraphs in HouReal's first amended petition:

> 47. RCI incorrectly informed the Court at a hearing in open court that because the 2017 version of Texas Property Code § 12.0071 applied to the recording of its expunction order, HouReal was legally barred from challenging the sale. This information was factually and legally incorrect.

> 48. RCI's incorrect arguments misled the Court into denying HouReal's requests for discovery about the sale before trial, which was just days away . . . .

> 49. Consequently, it was impossible for HouReal to enforce its claim for specific performance at trial. Therefore, res judicata is not a bar to HouReal's present right to seek specific performance from RCI as a remedy in this action, in which the NPH Defendants are parties.

According to RCI, these assertions by HouReal—that it can bring a separate lawsuit against RCI for a prior adjudicated claim because of statements RCI made before the trial court in the initial suit—demonstrate that HouReal's claim against RCI *in this suit* is "based on" or "in response" to RCI's exercise of its right to petition, i.e., its communications in the initial suit. We disagree with that characterization.

As an initial point, we note that the allegations quoted above are taken from HouReal's first amended petition. HouReal filed a second amended petition before RCI's TCPA motion was heard, which did not contain these allegations relied on by RCI. The second amended petition superseded and supplanted all prior petitions,

13

and it was HouReal's live pleading at the time the trial court ruled on the motion. *See* TEX. R. CIV. P. 65; *see also, e.g.*, *O'Hern v. Mughrabi*, 579 S.W.3d 594, 603 n.8 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The parties disagree about whether we consider only the live pleading for purposes of our TCPA analysis or whether we consider the earlier pleading as evidence as well. But here it makes no difference. Under either pleading, the TCPA does not apply.

We first address the second amended petition. There, HouReal pleaded that RCI committed two breaches of the 2014 Contract—(1) by failing to provide a property survey and (2) by conveying the Property to NPH Dayton on August 30, 2019, instead of performing under the 2014 Contract with HouReal. It further alleged that RCI concealed this conveyance from HouReal and that HouReal did not discover the sale until December 2019.

Although HouReal requested a postponement of the initial suit in order to allow it to conduct discovery into the sale, HouReal alleged that this request was denied by the trial court. "Therefore, it was impossible for HouReal to discover information that would have allowed it to bring an additional claim for this breach before the January 2020 trial." Further, HouReal alleged that RCI's concealed August 30, 2019 sale of the Property to NPH rendered specific performance (even though authorized by the 2014 Contract) impossible in the trial of the initial suit.

14

And, therefore, HouReal alleged that res judicata did not bar it from seeking specific performance as a remedy in this current suit.

Considering the above allegations in HouReal's second amended petition in a light most favorable to HouReal, as we must, we cannot agree with RCI that HouReal's current suit for breach of contract was based on or in response to any communications made by RCI in the initial suit. *See Walker v. Lunenberg*, 679 S.W.3d 883, 887 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

But even considering the allegations in the first amended petition related to RCI's statements during the initial suit, our analysis and conclusion remain the same—the TCPA does not apply here.

HouReal does not allege that those statements, as described in paragraphs 47 and 48 of the first amended petition, are what breached the 2014 Contract. Instead, the allegations in these paragraphs purport to describe the procedural background of the current suit. The gravamen of HouReal's current legal action is that the act of RCI conveying the property to NPH in August 2019, rather than performing under the 2014 Contract with HouReal (while its suit for specific performance was pending), constitutes a breach of that contract. This legal action, as pleaded in the first amended petition, thus does not "consist[] of" those statements by RCI in the initial suit. *See Walgreens*, 2025 WL 1415886, at *4.

15

Indeed, the legal action is premised on conduct not communications. *See, e.g.*, *Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at *8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.) (holding that TCPA was not implicated because plaintiffs' legal action was not based on or in response to law firm's communications in separate proceeding, but rather their alleged actions and conduct in representing another client adverse to plaintiffs, who were law firm's former clients, without disclosing such representation); *Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *3 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.) (holding that petition was not "premised on a communication" because "[t]he gravamen of Appellees' claim is that the act of Appellants in unilaterally collecting funds under a claimed right to contractual indemnity constituted a breach of their contract").[12]

To the extent that HouReal references statements made by RCI during the initial suit related to RCI's sale of the property to NPH, that alone does not create a sufficient nexus to the breach of contract claims here to invoke the TCPA. Courts have observed that "there is a distinction between communications used as evidence

---

[12] *See also Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.) ("In the present case, a careful review of Appellees' pleadings reveal that they have not alleged any communications as the basis of their claim, and instead, their allegations center on Appellants' negligent conduct, such as failing to maintain their fence. As such, these allegations are based solely on conduct and not communications; thus, the TCPA does not apply.").

to support a claim and claims that are based on or in response to (i.e., factually predicated upon) those communications." *Walker*, 679 S.W.3d at 889–90 (quoting *Hanna v. Williams*, 681 S.W.3d 416, 425 (Tex. App.—Austin 2023, pet. denied)) (holding that claims against defendant were factually predicated on his ownership of property that was subject of underlying dispute, and although warranty deed might be "a communication relevant to these claims as evidence to resolve the [plaintiffs'] suit for declaratory judgment and suit for judicial foreclosure, neither the warranty deed itself nor [the defendant's] action of filing it is part of any claim asserted against [the defendant] by the [plaintiffs]").

Although the statements made by RCI during the initial suit might be relevant evidence to ultimately resolve the issue of RCI's res judicata defense, they are not the "main ingredient," "fundamental part," or foundation of HouReal's breach of contract claims. *See Walgreens*, 2025 WL 1415886, at *3–4; *Ernst & Young*, 2023 WL 4239350, at *8. Nor are the breach of contract claims in "answer" or "in reaction to" these statements. *See Walgreens*, 2025 WL 1415886 at *3–4; *Ernst & Young*, 2023 WL 4239350, at *8. At most "they only rise to the level of 'relates to'—what had been the least exacting level of connection permitted under the previous version of the TCPA." *See ML Dev*, 649 S.W.3d at 628. But, as referenced, "relates to" has been deleted from the current version of the TCPA. And while "[t]he deleted phrase 'relates to' might encompass the chatter around [RCI's filing of the expunction

17

order], . . . 'based on' and 'in response to' are not so sweeping." *See id.* at 629 (holding that retailer's claims against sellers were not based on or in response to communications denying easement, but rather in response to action of denying easement access).[13]

In sum, the core of HouReal's current suit against RCI is a demand for specific performance based on RCI's alleged breaches of the 2014 Contract, including its 2019 sale of the Property to NPH Dayton. Thus, RCI's alleged communications in the initial suit relating to its recording of the expunction order, which happened *after* the sale occurred, do not in themselves provide the foundational predicate for HouReal's legal action against RCI. *See id.*; *Walker*, 679 S.W.3d at 889–90; *Ernst & Young*, 2023 WL 4239350, at *7–8.

Accordingly, after reading HouReal's pleadings "in a manner most sympathetic to the TCPA's non-applicability," we conclude that HouReal's breach of contract claims are not based on or in response to RCI's communications in a judicial proceeding. *See Cweren v. Eureka Multifamily Grp., L.P.*, 01-21-00470-CV, 2023 WL 2977755, at *16 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (mem. op.). Thus, we hold that the TCPA does not apply to HouReal's

---

[13]     *See also Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *7 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.) ("'Relate[d] to' was the most expansive of the three categories of connections and brought tangential communications within the TCPA's reach.").

breach of contract claims against RCI and that the trial court erred in dismissing those claims.

We sustain HouReal's first issue.[14]

## C.     Attorney's Fees

In its fourth issue, HouReal argues that RCI's request for attorney's fees should have been denied because it did not carry its burden to show that it was entitled to dismissal under the TCPA or, alternatively, that RCI's proof of its attorney's fees was legally insufficient.

We review a trial court's award of attorney's fees and costs under the TCPA for an abuse of discretion. *See ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 440 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). If a court orders dismissal of a legal action under the TCPA, the court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1).

In its TCPA motion to dismiss, RCI requested awards of attorney's fees and costs, and the trial court granted the motion and awarded RCI trial and conditional

---

[14]     Because we hold that the TCPA does not apply, we do not address HouReal's second and third issues with respect to whether HouReal met its evidentiary burden to survive dismissal under that statute or whether RCI established an affirmative defense, such as res judicata, as a matter of law. *See McLane Champions*, 671 S.W.3d at 920; *see also* TEX. R. APP. P. 47.1. We further express no opinion on the merits of HouReal's claims.

appellate attorney's fees and costs. Because we have determined that RCI did not satisfy its initial burden to establish its entitlement to dismissal of HouReal's claims under the TCPA—we further conclude that RCI is not entitled to any award of attorney's fees and costs under the TCPA. *See id.*; *Ashley v. Kenny*, No. 01-22-00823-CV, 2024 WL 3571364, at \*8 (Tex. App.—Houston [1st Dist.] July 30, 2024, no pet.) (mem. op.). Thus, we hold that the trial court abused its discretion by awarding attorney's fees and costs to RCI.

We sustain HouReal's fourth issue.

## Conclusion

For all of the reasons above, we reverse the trial court's final judgment granting RCI's TCPA motion to dismiss HouReal's breach of contract claims against RCI. We also reverse the trial court's awards of trial and conditional appellate attorney's fees and costs to RCI. We remand this cause to the trial court for further proceedings consistent with this opinion.

We deny all pending motions as moot.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Caughey and Guiney.

20